IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WARREN CLAYBAR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0205-WS-C |
| ) | |
| MICHAEL R. HUFFMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter came before the Court for a Final Pretrial Conference on October 21, 2015. The stated purposes of the conference were not only to make final preparations for the November 2015 non-jury trial setting of plaintiffs' claims against defendant Michael R. Huffman,[1] but also to resolve certain representation issues raised by defendants' counsel of record's Renewed Motion to Withdraw (doc. 60), which set forth in detail defendants' history of non-responsiveness and failure to pay invoices of both counsel and third-party vendors (such as court reporters and videographers).

In order to resolve all of these issues fairly and efficiently without disrupting the current trial setting, the Court concluded that Michael Huffman's presence at the Final Pretrial Conference was necessary, along with one or both of his lawyers. Through a series of court orders, Huffman was directed to attend the conference personally. On October 1, 2015, Magistrate Judge Cassady entered an Order stating as follows: "[T]he Court **ORDERS MICHAEL R. HUFFMAN** to attend the final pretrial conference scheduled before Chief Judge Steele on **October 13, 2015, at 9:30 a.m., in Mobile, Alabama** to participate in the discussion

---

[1] Plaintiffs also assert claims in this action against another defendant, Huffman Construction, Inc.; however, those claims were stayed by Order (doc. 37) entered on March 6, 2015, upon notice that Huffman Construction had filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Indiana. All indications before the Court are that the automatic stay remains in effect as to plaintiffs' claims against Huffman Construction at this time.

of the issues highlighted in this Order." (Doc. 56, at 4.) On October 2, 2015, the undersigned entered an Order resetting the Final Pretrial Conference for October 21, 2015 at 2:00 p.m., to accommodate scheduling conflicts with the undersigned's criminal trial docket. The October 2 Order specifically noted that Huffman had been ordered to attend the Final Pretrial Conference, and directed the Clerk of Court to mail a copy of such Order to him to ensure his awareness of the new setting. (*See* doc. 57.) On October 14, 2015, the undersigned entered another Order carrying defendants' counsel's Renewed Motion to Withdraw to the pretrial conference and explaining as follows:

> "[The Final Pretrial Conference] remains set for October 21, 2015 at 2:00 p.m. Both defendant Michael R. Huffman and at least one of his counsel of record are **ordered** to attend such conference, at which time the undersigned will hear from counsel and client alike regarding the representation issues described in the Renewed Motion and … will forge a pathway forward to trial, which remains set for the November 2015 civil term."

(Doc. 61, at 1-2.) Again, the Clerk of Court mailed a copy of the October 14 Order to Huffman at his address of record.

Michael Huffman did not contact court personnel concerning these orders until the morning of October 20, 2015 (the eve of the pretrial conference), when he personally called chambers and asked to speak with the undersigned. Chambers staff correctly informed Huffman that no such direct communication was permissible under applicable rules. Staff further explained that if Huffman sought any relief or wanted to submit any information or requests to the Court, he must do so via written filing made through the Clerk's Office. At no time during this brief telephone call did Huffman reveal any facts or circumstances that might justify his non-attendance at the Final Pretrial Conference, much less warrant a continuance of same. To be clear, Huffman did not intimate during the call that he was requesting a continuance or asking to be relieved of the obligation to attend the Final Pretrial Conference.

On the morning of October 21, 2015 (less than five hours before the Final Pretrial Conference), Huffman filed a short, one-paragraph email message with the assistance of his estranged counsel of record. In its entirety, the body of that email consisted of the following text (typographical errors in original):

> "Please excuse my absence from the pre trail today. I am on a project in Louisiana and cannot leave. I'm aware of john and clay filing another motion to withdraw from this case. I simply cannot afford to continue to pay them. We have payed in excess of $250,000.00 in attorney fees. I will either

>havetoreprrsent myself or file personal bankruptcy.  I'm doing my best to get this all worked out but I order to do so I must work.  Sorry if this an enconvieniance for anyone."

(Doc. 63.)  Neither the undersigned's staff nor Clerk's Office personnel have had further contact or interactions with Huffman following his submission of that email.  At no point did the undersigned rule – much less any court official notify Huffman – that he was excused from attending the Final Pretrial Conference.

At the appointed hour of 2:00 p.m. on October 21, 2015, the undersigned convened the Final Pretrial Conference in this matter as scheduled.  Plaintiffs' counsel of record (John P. Kavanagh, Jr. and Brian McEwing) attended, the latter having flown in from out of state to participate in the conference.  One of Huffman's attorneys of record (A. Clay Rankin, III) was also present, albeit with the hope of being relieved of all further duties and responsibilities in this matter at the earliest possible time.  Huffman was nowhere to be seen, despite his actual knowledge of both the Final Pretrial Conference and the Court's unambiguous rulings mandating his personal appearance.  Via his unexcused absence, Huffman effectively prevented any meaningful discussion from occurring at the conference with regard to final trial preparations.  The result is that, by electing not to comply with court orders, Huffman needlessly caused both judicial and litigant resources to be squandered, and derailed a trial setting that was fixed back in September 2014.  In other words, Huffman's disobedience reduced the Final Pretrial Conference to a colossal waste of time for all concerned.

Insofar as Huffman intended for his October 21 email message to excuse his participation in the Final Pretrial Conference, that submission is unsatisfactory.  Again, three separate written judicial directives had placed Huffman squarely on notice that he was **ordered** to attend the conference himself.  The Orders dated October 1, October 2 and October 14 were not phrased as invitations for Huffman to attend, nor as conferring upon him a discretionary, aspirational option to do so if it suited his fancy.  These Orders were framed in unambiguous, mandatory terms.  And there is no question that Huffman was aware of those judicial directives; after all, both the October 20 telephone call and the October 21 email evince Huffman's subjective understanding that he was expected to appear in court for the pretrial conference.  Nonetheless, the gravamen of his message was that Huffman had elected to stay at a job site in lieu of coming to court.  Nothing in the October 21 email suggested that Huffman was physically unable to leave his work station, that doing so would expose him to severe financial or personal hardship, or that there

were emergencies or exigent circumstances in play.  Instead, Huffman simply indicated that he was going to stay at work and breezily concluded, "Sorry if this an enconvieniance for anyone." Mandatory court appearances are not a matter of convenience, to be waved off casually by one who would rather be somewhere else.  Rarely does this Court encounter a litigant who would not prefer to be somewhere else carrying on his or her normal workaday affairs, rather than coming to federal court in response to a court order.  And yet, every single day, myriad case participants, witnesses and others set aside their professional and personal obligations and come to court when commanded to do so.  The orderly, efficient administration of justice depends on it.  Not Huffman.  For those who do not appear in court when ordered to do so, there are – and must be – significant adverse consequences.  This Order delineates those consequences.

In light of the foregoing, it is **ordered** as follows:

1. Based on the substantial showing that defendants have failed to communicate with their retained counsel, have failed to pay substantial invoices now due and owing to counsel and third-party vendors, and have otherwise failed to comply with the terms of their engagement agreement, the Renewed Motion to Withdraw as Counsel (doc. 60) is **granted**.  Attorneys Rankin and Jernigan are hereby deemed **withdrawn** from this matter and are relieved of any further obligation to represent or appear on behalf of Huffman and Huffman Construction in these proceedings.  The Clerk of Court is **directed** to terminate Rankin and Jernigan as counsel of record for defendants.  Henceforth (or at least until such time as substitute counsel appears), all court notices intended for Huffman or Huffman Construction shall be served on those defendants directly at Michael Huffman's address of record, to-wit: 10149 S. 300 East, Warren, IN 46792.  The same applies to plaintiffs' filings, which plaintiffs must serve on defendants.

2. For defendant Michael Huffman's willful disobedience, without cause, of multiple court orders compelling his attendance at the Final Pretrial Conference, the Court hereby imposes the sanction of **default**.[2]  "A defendant, by his default,

---

[2] "A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).  "The key to unlocking a court's inherent power is a finding of bad faith." *Id.* (ctation omitted).  "A party demonstrates bad faith by delaying or disrupting the litigation or hampering (Continued)

      admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citation and internal quotation marks omitted).

3.     Notwithstanding Huffman's default, the issue of damages remains unresolved.[3] At the Final Pretrial Conference, plaintiffs' counsel expressed their desire to prove up damages via written submission, rather than a hearing. Accordingly,

---

enforcement of a court order." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (citation and internal marks omitted). Huffman has unquestionably delayed and disrupted this litigation by disregarding multiple orders to appear at the Final Pretrial Conference, resulting in a needless waste of judicial and litigant resources and effectively scuttling the November trial setting of this case without good reason. Additionally, sanctions are appropriate under the Federal Rules of Civil Procedure, which authorize the sanction of "rendering a default judgment against the disobedient party" when that party "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." Rule 16(f)(1)(A) & (C), Fed.R.Civ.P.; Rule 37(b)(2)(A)(vi), Fed.R.Civ.P. The Court understands, of course, that default is a severe sanction, not to be cavalierly imposed. *See, e.g., Rasmussen v. Central Florida Council Boy Scouts of America, Inc.*, 412 Fed.Appx. 230, 232 (11th Cir. Feb. 2, 2011) ("[I]n order to impose the severe sanction of a default judgment, the district court must make a finding of willful or bad faith failure to comply. … The district court must also find that lesser sanctions are not sufficient.") (citations omitted). Here, however, the Court expressly finds that Huffman's disobedience was willful and in bad faith, and that lesser sanctions will not suffice. Again, Huffman was notified on three different occasions by three different written orders (of which he had actual notice) that he must personally attend the Final Pretrial Conference. In lieu of attending, Huffman (whose trial testimony in related litigation in this District Court reveals him to be an experienced, sophisticated businessman) simply fired off an e-mail on the morning of the conference that announced his intention to remain at work and apologized if his decision caused any inconvenience. Thus, Huffman knowingly and willfully refused to comply with multiple court orders without good cause, all to the detriment of the orderly and efficient administration of justice in this litigation. Under these circumstances, no lesser sanctions will suffice, and default is the only appropriate sanction under both Rule 16(f)(1) and the inherent powers of this Court.

[3]     *See, e.g., PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1292 (S.D. Ala. 2010) ("While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.") (citation omitted). Such a determination of damages may be made without a hearing "when the district court already has a wealth of evidence … such that any additional evidence would be truly unnecessary to a fully formed determination of damages." *Id.* at 1292 n.9.

plaintiffs are **ordered**, on or before **November 12, 2015**, to file such affidavits, exhibits and other materials, together with a legal memorandum, that they deem sufficient both to document and to explain the amount and character of the damages sought, so as to prevent the requested damages award from being either uncertain or speculative. Plaintiffs must serve a complete copy of these filings on Huffman at his address of record. Huffman will be allowed until **November 25, 2015** to be heard (solely as to plaintiffs' damages showing, inasmuch as the default precludes him from contesting the merits of the claims against him), after which the issue of damages will be taken under submission. Default judgment will be entered against Michael Huffman at such time as damages determinations have been made on the record thus established.

4. This action remains **stayed** as to defendant Huffman Construction, Inc., whose bankruptcy proceedings are ongoing at this time. Given the withdrawal of Huffman Construction's counsel of record, the burden shifts to plaintiffs' counsel to file a written report on or before the 10th day of each month to apprise the Court of the current status of the Huffman Construction bankruptcy proceedings and whether the automatic stay remains in effect as to plaintiffs' claims against that entity. Upon the lifting of the automatic stay and any resumption of these proceedings against Huffman Construction, that defendant will be required to make arrangements to retain new counsel promptly, given the prohibition on corporations appearing *pro se* in federal litigation.[4]

[4] *See, e.g., Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that ... cannot appear *pro se*, and must be represented by counsel."); *S.E.C. v. Merchant Capital, LLC*, 2012 WL 3205543, *1 n.2 (11th Cir. Sept. 11, 2012) ("It is well established, however, that a business organization cannot appear *pro se* and must be represented by counsel, not merely by a stockholder or officer.") (citation omitted). Simply put, Huffman Construction cannot represent itself, nor can its managers, members, officers or employees file papers in this case on behalf of that entity unless they are licensed attorneys acting in a representative capacity. For this reason, upon expiration of the automatic stay in bankruptcy, Huffman Construction must retain substitute counsel if it wishes to be heard or to defend in this action.

5.	The Clerk of Court is directed to mail a copy of this Order to defendant Michael Huffman at his address of record.

DONE and ORDERED this 23rd day of October, 2015.

>	s/ WILLIAM H. STEELE
>	CHIEF UNITED STATES DISTRICT JUDGE