IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WARREN CLAYBAR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0205-WS-C |
| ) | |
| MICHAEL R. HUFFMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

ORDER

On October 23, 2015, the undersigned entered an Order (doc. 64) imposing the sanction of default against defendant Michael R. Huffman pursuant to Rule 16(f)(1), Fed.R.Civ.P., and the inherent powers of this Court. The October 23 Order fixed deadlines for plaintiffs to submit evidence proving their claimed damages, and for Michael Huffman to respond to same. Plaintiffs made an extensive evidentiary submission – consisting of a memorandum of law, affidavits, spreadsheets, invoices and other exhibits – on November 4, 2015. (*See* doc. 65.) Despite being served with copies of both the October 23 Order and plaintiffs' November 4 evidentiary submission, Huffman has remained silent on the issue of damages, and his time for responding expired more than 10 days ago. The issues of damages and entry of default judgment against Michael Huffman are now squarely before the undersigned.

**I.     Relevant Background.**

By virtue of his default, defendant Michael Huffman has admitted all well-pleaded factual allegations in the Second Amended Complaint (doc. 22).[1] Those facts deemed admitted include, *inter alia*, the following: (i) following the DEEPWATER HORIZON oil spill in May

---

[1]  *See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citation and internal quotation marks omitted); *Fidelity Bank v. Key Hotels of Brewton, LLC*, 2015 WL 7258513, *7 (S.D. Ala. Nov. 16, 2015) (same).

2010, an oil-spill response entity called National Response Corporation ("NRC") was tasked with managing cleanup efforts; (ii) in mid-June 2010, NRC requested additional resources from one of its contractors, Northstar Marine, Inc., which lacked the administrative capacity to accommodate the request; (iii) Northstar Marine offered the direct NRC contract to plaintiff Rian Glasscock if he could marshal the necessary resources; (iv) Glasscock, in turn, partnered with plaintiffs Warren Claybar and Halley Moor, as well as defendant Huffman Construction, Inc., to utilize their respective strengths, resources and expertise to perform the NRC direct contract; (v) in exchange for plaintiffs providing resources and services in fulfillment of the NRC direct contract, defendants, Michael R. Huffman and Huffman Construction, Inc., verbally agreed to a profit-sharing arrangement under which defendants would pay each of Glasscock, Claybar and Moor 25% of the net profits from the NRC direct contract; and (vi) notwithstanding their promise and the millions of dollars in profits they received for the NRC direct contract, defendants never paid Glasscock, Claybar and Moor any portion of their agreed-upon shares of such net profits. (*See* doc. 22, at ¶¶ 9-35.) The Second Amended Complaint specifically alleges that Huffman and Huffman Construction knowingly deceived plaintiffs into providing assistance for the NRC contract, and that defendants never intended to make good on their promise to share profits equally with each of Glasscock, Claybar and Moor. (*See id.* at ¶¶ 39-41.)

On the strength of these and other factual allegations, plaintiffs asserted claims against Michael Huffman and Huffman Construction for breach of contract, unjust enrichment, conversion, and fraudulent/negligent/reckless misrepresentation. In addition to bringing claims against Michael Huffman individually for making the contested promises and misrepresentations, plaintiffs asserted a claim against him on a theory of piercing the corporate veil, predicated on allegations that Huffman and Huffman Construction had "combined and operated their affairs in such a way as to lose the protection of separate corporate and individual entities." (*Id.* at ¶ 47.) By Order (doc. 34) dated September 19, 2014, the Court denied Huffman's Rule 12(b)(6) motion and specifically found that the fraud/misrepresentation and piercing the corporate veil causes of action stated cognizable claims for relief against Michael Huffman.[2] As such, it cannot be seriously questioned – and the Court expressly finds – that the

---

[2] As to the fraud claim, the September 19 Order found that the Second Amended Complaint contained sufficient factual allegations to alert Michael Huffman to the precise
(Continued)

Second Amended Complaint states actionable claims against Michael Huffman, so as to support entry of a default judgment against him on those causes of action. *See generally Graveling v. Castle Mortgage Co.*, 2015 WL 6847947, *6 (11th Cir. Nov. 9, 2015) ("A default is warranted only when there is a sufficient basis in the pleadings for the judgment entered – that is, when the factual allegations of the complaint state a claim for relief. … The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (citations omitted); *North American Specialty Ins. Co. v. Southern Reinforcing, LLC*, 2014 WL 4322391, *1 (S.D. Ala. Aug. 29, 2014) ("before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought") (citations, internal marks and emphasis omitted).

**II.     Plaintiffs' Proof of Damages.**

Notwithstanding the propriety of default judgment, it remains incumbent on plaintiffs to prove their damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Fun Charters, Inc. v. Vessel SHADY LADY, Official No. 681969*, 2015 WL 789751, *3 (S.D. Ala. Feb. 25, 2015) (citations omitted). "Even in the default judgment context, a court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Id.* (citations and internal marks omitted). Thus, the entry of default against Michael Huffman and the sufficiency of the factual allegations of the Second Amended Complaint to state claims against him do not, in and of themselves, establish plaintiffs' entitlement to any quantum of damages, much less the particular amount recited in the pleadings. Plaintiffs must prove their damages. Of course, such proof

---

misconduct with which he was charged. (Doc. 34, at 4-5.) As to the piercing the corporate veil claim, the Order opined that plaintiffs' pleading "delineates specific facts supporting a reasonable inference that Huffman Construction neither observed the legal requirements of corporate law nor maintained corporate records, that corporate and personal funds were intermingled (with corporate funds being used for personal purposes), and that an individual (Huffman) has drained funds from the corporation. These are just the sort of facts that the Alabama Supreme Court recognized … might justify the unusual step of piercing the corporate veil to impose pass-through individual liability." (*Id.* at 7.)

need not be to a level of absolute certainty; however, there must be a sufficient showing that the damages award is not speculative. *See, e.g., Atchafalaya Marine, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 959 F. Supp.2d 1313, 1327 (S.D. Ala. 2013) ("while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate") (citations omitted); *Parsons v. Aaron*, 849 So.2d 932, 949 (Ala. 2002) (explaining that "[i]n computing damages for breach of contract, a jury need not achieve mathematical precision," as long as the record reveals "some reasonable basis for the amount of its award").

Cognizant of their burden to prove damages by establishing a sound record basis for same, plaintiffs have worked up an extensive evidentiary submission, as well as a memorandum of law to explain their evidence. (*See* doc. 65.) Again, the well-pleaded factual allegations in the Second Amended Complaint reflect as follows:

> "Plaintiffs and Defendants agreed to share equally in the net profits of the Defendants [*sic*] contract with NRC. In other words, each Plaintiff would keep 25% of the net proceeds of the NRC contract, and Huffman Construction would receive 25% of the net proceeds."

(Doc. 22, ¶ 20.) Plaintiffs have also pleaded that defendants never paid anything under the profit-sharing agreement. (*Id.*, ¶ 22.) Accordingly, each plaintiff's measure of damages is one quarter of the net profits paid to Huffman Construction under the NRC direct contract.

As a matter of contractual interpretation, undefined terms in a contract are given their plain meaning. *See, e.g., City of Gadsden v. Boman*, 143 So.3d 695, 704 (Ala. 2013) ("Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.") (citations omitted); *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) ("The plain meaning of a contract's language governs its interpretation under general contract principles.") (citations and internal marks omitted). The plain, ordinary meaning of the terms "net profits" or "net proceeds" would be the total revenue / earnings paid to Huffman Construction under the NRC direct contract, less all costs, expenses, charges and outlays associated with same.[3]

---

[3]   "The term net profit can easily be defined by reference to an extrinsic standard." *Weinreich v. Sandhaus*, 850 F. Supp. 1169, 1177-78 (S.D.N.Y. 1994). *See generally St. John v. Erie R. Co.*, 89 U.S. 136, 148, 22 L.Ed. 743, 22 Wall. 136 (1874) ("The preferred dividends were to be paid out of 'the net earnings of the road.' The lexical definition of net is 'clear of all
(Continued)

To establish the net profits received on the NRC direct contract, plaintiffs begin with the Joint Pretrial Document, which contained a stipulation that "[t]he parties agree that the Defendants received gross revenue of $9,159,039.77 under the NRC contract."  (Doc. 62, at 14.) Plaintiffs then make an extensive showing (in the form of affidavits, spreadsheets, invoices and other exhibits) of defendants' expenses, costs, charges and outlays associated with performing the NRC direct contract.  Careful review of those materials demonstrates to a reasonable certainty that Huffman Construction's costs and expenses for the NRC direct contract consisted of the following: (i) payment of $4,903,479.32 to Jones & Moor, LLC, for vessels, operators, deckhands and materials provided by that firm during the Deepwater Horizon cleanup (Moor Aff. (doc. 65, Exh. B), ¶¶ 3-4, 6-10); (ii) payment of $541,159.59 to Lily Contractors, LLC, for vessels, operators, deckhands and materials provided by that firm during the Deepwater Horizon cleanup (Claybar Aff. (doc. 65, Exh. C), ¶¶ 3-4, 6-8); (iii) payment of $376,561.08 in expenses such as meals and entertainment, repairs and maintenance, supplies, travel expenses, fuel, and so on in connection with performance of the NRC contract (McEwing Aff. (doc. 65, Exh. D), ¶ 10)[4]; and (iv) payment of an agreed 10% finder's fee of $915,903.98 owed to Northstar Marine,

---

charges and deductions.' – Webster. 'That which remains after the deduction of all charges or outlay, as net profit.' – Worcester.  The popular acceptation of the term is the same.") (emphasis omitted); *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1117 n.6 (5th Cir. 1980) (trial judge instructed jury that "net profit is defined as that gross amount that would have been received pursuant to the business being managed by the plaintiff, … less the cost of running that business during the life of that contract in question"); *Black's Law Dictionary* (9th ed. 2009), at 1325 & 1329 (defining "net proceeds" as "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)" and defining "net profit" as "[t]otal sales revenue less the cost of the goods sold and all additional expenses").

       [4]      For this third category of expenses, plaintiffs furnish an itemized expense report generated from Huffman Construction's Quickbooks data file produced in discovery in this litigation.  (McEwing Aff., ¶¶ 3-6 & Exh. B.)  Certain enumerated items have been excluded from expenses pursuant to plaintiffs' reasonable assessment that they either did not apply to the NRC contract or double-counted expenses already tracked as expenses via the Jones & Moor and Lily Contractors invoices.  (*Id.*, ¶ 9.)  Thus, this compilation of defendants' expenses in performing the NRC contract draws directly on Huffman Construction's own data and accounting records, yielding considerable confidence in the figures' accuracy and completeness. And again, defendant Michael Huffman was afforded a full and fair chance to be heard as to these damages calculations if he wished to challenge any of plaintiffs' numbers or judgment calls (Continued)

as ordered by this Court in related litigation styled *Northstar Marine, Inc. v. Huffman Construction, Inc.*, Civil Action No. 13-0037-WS-C.[5]

Subtracting these documented costs, expenses, charges and outlays from the gross revenues received by the defendants on the NRC contract yields a total net profit calculation of $2,421,935.80.[6]  Each plaintiff is entitled to 25% of those net profits; therefore, judgment will be awarded in favor of each plaintiff and against defendant Michael Huffman in the amount of **$605,483.95**.

**III.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Each plaintiff has established that he is entitled to an award of damages against defendant Michael Huffman in the amount of $605,483.95;

2. A default judgment will be entered in favor of each plaintiff, and against defendant Michael Huffman, in that amount; and

3. This action remains pending, although presently stayed, as to defendant Huffman Construction, Inc., because of ongoing bankruptcy proceedings involving that entity.  The October 23 Order directed plaintiffs "to file a written report on or before the 10th day of each month to apprise the Court of the current status of the

---

as to which items from the Quickbooks data files should or should not properly be counted in computing "net profits;" however, Huffman elected not to avail himself of that opportunity.

[5]     Following a non-jury trial held on November 19, 2014, this Court made a specific finding that "Huffman Construction breached its contract with Northstar, and that Northstar's damages are 10% of Huffman Construction's gross receipts from the direct NRC contract, or $915,903.98."  (Civil No. 13-0037, doc. 99 at 11.)  Plaintiffs in this case correctly recognize that the full amount of that 10% "finder's fee" owed to Northstar Marine (with no deductions or offsets for amounts withheld by Northstar Marine from invoices sent by Huffman Construction in its capacity as a subcontractor to Northstar Marine in performing a separate NRC contract) is properly backed out of gross revenues in calculating defendants' "net profits" on the NRC direct contract.

[6]     This figure is reached by the following arithmetic: $9,159,039.77 (gross receipts) - $4,903,479.32 (payments to Jones & Moor) - $541,159.59 (payments to Lily Construction) - $376,561.08 (other documented expenses from Huffman Construction's Quickbooks file) - $915,903.98 (finder's fee owed to Northstar Marine).

Huffman Construction bankruptcy proceedings" (doc. 64, at 6); however, plaintiffs filed no such report for the month of November 2015.  If plaintiffs wish to continue pursuing their claims against Huffman Construction, they must file monthly status reports concerning the ongoing bankruptcy proceedings on or before the 10th day of each month.  Of course, if plaintiffs no longer wish to pursue their claims against Huffman Construction, they should notify the Court and/or file appropriate dismissal paperwork.

DONE and ORDERED this 7th day of December, 2015.

                                                   s/ WILLIAM H. STEELE
                                                   CHIEF UNITED STATES DISTRICT JUDGE